UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN ZINKEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. _____ |
| | ) | |
| VICKY PIPER, an individual, PRADIPTA | ) | [Removed From Circuit |
| KOMANDURI, an individual, CAROLYN NELSON, an | ) | Court of Cook County, Illinois |
| individual, and LOYOLA UNIVERSITY | ) | Case No. 2016L009718] |
| HEALTH SYSTEM, an Illinois corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL OF A CIVIL ACTION

Defendants, Loyola University Health System (hereinafter "Loyola University"), Vicky Piper (hereinafter "Piper"), Pradipta Komanduri (hereinafter "Komanduri") and Carolyn Nelson (hereinafter "Nelson") (hereinafter collectively "Defendants"), by and through their attorneys, Camille Khodadad and Brian Hendricks of Hall Prangle & Schoonveld, LLC, submit this Notice of Removal of the above-captioned civil action from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446 and, and as grounds for the removal state as follows:

### Statement of the Case

1.      On or about September 30, 2016, John Zinkel filed a Complaint against Defendants in the Circuit Court of Cook County, Illinois, Case No. 2016L009718 (the "State Court Action")  alleging Intentional Infliction of Emotional Distress against Defendants Piper, Komanduri and Nelson (Count  I), Intentional Infliction of Emotional Distress by Respondeat Superior against Defendant Loyola University (Count II), and Tortious Interference with a

Business Relationship or Expectancy against Defendants Piper, Komanduri and Nelson (Count III). (See Complaint, attached hereto as Exhibit A).

2.      On October 4, 2016, attorney for Defendants, Camille Khodadad, advised Plaintiff's counsel, Ruth Major, that she would accept service for Defendants. On October 11, 2016, Plaintiff's counsel, Daniel Broadwell, served Defendants through Ms. Khodadad. (See email from Camille Khodadad to Ruth Major dated October 4, 2016, attached hereto as Exhibit B; and email from Daniel Broadwell to Camille Khodadad dated October 11, 2016 with civil cover sheet and summons, attached hereto as Exhibit C).

3.      On November 30, 2016, Circuit Court Judge Larry Axelrood entered an Order giving Defendants until December 28, 2016 to answer or otherwise plead. (See Judge Axelrood's November 30, 2016 Order, attached hereto as Exhibit D).

4.      On December 30, 2016, Defendants filed a Motion to Dismiss all counts of Plaintiff's Complaint. At the January 6, 2017 hearing on Defendants' Motion to Dismiss, Plaintiff's counsel advised the Court that Plaintiff would be filing an Amended Complaint. Accordingly, the Court entered an Order: granting Plaintiff until on or January 18, 2017 to file an Amended Complaint; entering and continuing Defendants' Motion to Dismiss until February 3, 2017; and setting the matter for status on February 3, 2017. (See January 6, 2017 Order, attached hereto as Exhibit E).

5.      On January 17, 2017, Plaintiff filed an Amended Complaint asserting the following additional causes of action: Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* against Defendant Loyola University (Count IV); Discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* against Defendant Loyola University (Count V); Discrimination in violation of the

2

Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. against Defendant Loyola University (Count VI); and Wrongful discharge against Defendant Loyola University (Count VII). (A copy of the January 17, 2017 Amended Complaint is attached hereto as Exhibit F).

6.　　At the February 3, 2017 hearing, the Court entered and continued Defendants' Motion to Dismiss to March 3, 2017.　(See February 3, 2017 Order, attached hereto as Exhibit G).

## Federal Question Jurisdiction under 28 U.S.C. § 1331

7.　　This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 and the matter may be removed pursuant to 28 U.S.C. §1441 because this civil action arises under the laws of the United States.

8.　　In Plaintiff's January 17, 2017 Amended Complaint in the State Court Action, Plaintiff added the following causes of action based on federal law:　Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* against Defendant Loyola University (Count IV); Discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* against Defendant Loyola University (Count V); and Discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* against Defendant Loyola University (Count VI).

9.　　These federal law causes of action were not alleged in the original Complaint which was based solely on state law claims.

10.　　As Plaintiff's discrimination claims are predicated on federal law, the State Court Action is properly removable to this Court.

11.     Under 28 U.S.C. § 1367 *et seq.*, the federal courts have supplemental jurisdiction over Plaintiff's state law claims as they are "related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

### Procedural Requirements for Removal Have Been Satisfied

12.     This Notice of Removal has been filed within the permissible 30 day period of service of the Amended Complaint (January 17, 2017) which gave the basis for removal. Removal is therefore timely in accordance with 28 U.S.C. § 1446(b).

13.     The United States District Court for the Northern District of Illinois is the federal judicial district encompassing Cook County, Illinois, where this action was filed. Therefore, venue lies in this Court pursuant to 28 U.S.C. §1441 (a) ("any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district of the United States for the district and division embracing the place where such action is pending").

14.     Pursuant to 28 U.S.C. §1446 (a), copies of "all process, pleadings, and orders served upon" Defendants in the State Court Action are attached hereto as Exhibits A and C-G.

15.     Pursuant to 28 U.S.C. §1446 (d), Defendants are giving written notice of the filing of the Notice of Removal to Plaintiff and a copy of this Notice of Removal is being filed with the Clerk of the Circuit of Cook County, Illinois.

### Conclusion

By this Notice of Removal, Defendants do not waive any objections they may have to jurisdiction or venue, or any other defenses or objections they may have to this action. Defendants intend no admission of fact, law or liability by this Notice, and expressly reserves all defenses, motions and/or pleas.

4

Respectfully submitted,


/s/ Camille N. Khodadad
One of the Attorneys for Defendants LOYOLA
UNIVERSITY HEALTH SYSTEM, VICKY PIPER,
PRADIPTA KOMANDURI and CAROLYN NELSON

Camille N. Khodadad (ckhodadad@hpslaw.com)
Brian F. Hendricks (bhendricks@hpslaw.com)
HALL PRANGLE & SCHOONVELD, LLC
200 South Wacker Drive, Suite 3300
Chicago, Illinois 60606
312-345-9600 | Phone
312-345-9608 | Fax


## CERTIFICATE OF SERVICE

The undersigned, a non-attorney, states that she served the foregoing via U.S. mail to all counsel of record below before the hour of 5:00 p.m. on the 15th day of February, 2017:

**Attorney for Plaintiff**
The Law Offices of Ruth I. Major, PC
30 W. Monroe Street, Suite 1650
Chicago, IL 60603


/s/    Diana Castillo
Diana Castillo

[x]    Under penalties as provided by law pursuant to 735 ILCS. 5/1-109, I certify that the statements set forth herein are true and correct.

4835-3689-4017, v. 1

5

ELECTRONICALLY FILED
9/30/2016 7:25 PM
2016-L-009718
CALENDAR: R
PAGE 1 of 17
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

JOHN ZINKEL )
)
Plaintiff, )
)
v. ) Case No.
)
VICKY PIPER, an individual, PRADIPTA )
KOMANDURI, an individual, CAROLYN )
NELSON, an individual, and LOYOLA )
UNIVERSITY HEALTH SYSTEM, an )
Illinois corporation, )
)
)
Defendants. )

## VERIFIED COMPLAINT AT LAW

Plaintiff John Zinkel, by his attorneys, The Law Offices of Ruth I. Major, P.C., for his

Verified Complaint at Law against Defendants, Vicky Piper, Pradipta Komanduri, Carolyn Nelson

and Loyola University Health System ("Loyola") alleges as follows:

### INTRODUCTION

1.      Mr. Zinkel was employed by Loyola for 33 years during which time he was

repeatedly promoted and held various positions within the hospital. His most recent title was

Director of Respiratory Care.

2.      During Mr. Zinkel's employment, he helped redesign the Loyola LIFESTAR

Aeromedical Program, which provides critical care transport service, after he discovered that the

original helicopter transport service was improperly overcharging the hospital millions of dollars

per year. Mr. Zinkel's contributions to the new LIFESTAR program included assisting the new

vendor in the building of the helicopter, whereby he had input into the design specifications, and

assisting in the hiring of the pilots who would be flying the new helicopter. Mr. Zinkel also



developed the Loyola Pediatric Mobile Health Unit, which is a pediatric doctor's office on wheels that serves underprivileged communities in the Chicago area. The first of its kind in the Midwest, it provides vital healthcare services to children and young adults, from birth to age 21, who might otherwise not have access to healthcare in their community. It has served 113,000 patients since its inception. Mr. Zinkel also developed the Loyola Fitness Center Operations. The Loyola Fitness Center is a beautiful, state-of-the-art fitness club in Maywood, near Oak Park, with endless amenities and services to fit the community's needs. It is the only certified Medical Fitness Association (MFA) facility in its area.

3.      Mr. Zinkel was also recognized for his contribution to Loyola on multiple occasions, as the recipient of multiple awards, including Loyola's 2005 Spirit of Dr. Martin Luther King Award, Ronald McDonald House Charities' 2006 Spirit of Hope Award for his work with the Loyola Pediatric Mobile Health Unit, and Loyola's 2008 Magis Leadership Award.

4.      Beginning in March 2013, Loyola began to discharge white male employees over 40, many of whom were long time employees of Loyola like Mr. Zinkel, and replace them with younger, often female employees, and often non-white employees. Many of these employees had devoted a large part of their professional careers to Loyola and were primary breadwinners for their families. At that time, Human Resources expressed a goal of cutting costs, including by reducing sick leave. Mr. Zinkel was very concerned about the company targeting sick leave, especially because he was diagnosed with leukemia in 2011.

5.      On or about September 30, 2014, Mr. Zinkel was directed to reduce his staff by seven full-time equivalent employees ("FTEs"), which was almost twice the amount that had been recommended by the Loyola unit responsible for determining appropriate staffing hospital-wide.

At that time, both Defendant Piper and Defendant Nelson were already aware of his medical condition.

6. Following the meeting, Mr. Zinkel drafted several plans for staff reorganization but those plans were always met with subjective criticism. Not a single one of his plans was deemed acceptable by his supervisor, Defendant Komanduri. Based on his purported failures in connection with the reorganization, Mr. Zinkel was placed on a Work Improvement Plan (hereinafter referred to as "WIP"). He had never received any performance-related criticism prior to the issuance of the WIP in his 33 years of employment, and the WIP contained false statements regarding his performance. As a result of the stress induced by his receipt of the WIP and the WIP meeting itself, Mr. Zinkel's leukemia substantially worsened. Only three days after the WIP was instituted, Mr. Zinkel collapsed twice, once in his office and once at the doctor's office, causing his doctor to place him on triple chemotherapy and a three-month leave per the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. (hereinafter referred to as "FMLA). Mr. Zinkel attempted to return to work only two months into his FMLA leave, as he feared for his job. He obtained his doctor's permission by volunteering to work during the day and receive his chemotherapy at night. After returning to work, Mr. Zinkel continued to submit reorganization plans for his department, and those plans were continually rejected by Defendant Komanduri and Defendant Nelson. Finally, on February 20, 2015, Mr. Zinkel received a separation agreement and release from Defendants Nelson and Komanduri. The time period for improving performance under the WIP had not expired, and had in fact barely started, at the time he went on the FMLA-approved leave. After informing both women that he was still receiving chemotherapy and their conduct may be in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (hereinafter referred to as the "ADA"), they allowed a three-month extension of Mr. Zinkel's FMLA leave but he was

not permitted to return to work. Mr. Zinkel was told that after his leave expired, his employment would be terminated. Defendants maintained that the termination occurred for performance reasons, yet in March 2015, the very month after he was told his employment was being terminated, Acting Director of Respiratory Care Bob Obias, Mr. Zinkel's significantly younger and non-disabled replacement, implemented the very same reorganization plan that had been used as the basis for Mr. Zinkel's performance plan.

## PARTIES

7.     Plaintiff John Zinkel is a citizen of Illinois. He was an employee of Loyola for 33 years before his employment was involuntarily terminated, holding the position of Director of Respiratory Care just prior to his termination.

8.     Defendant Vicky Piper is a citizen of Illinois. Ms. Piper, an agent of Loyola, worked as the Human Resources Vice President at all times relevant to this Verified Complaint.

9.     Defendant Pradipta Komanduri is a citizen of Illinois. Ms. Komanduri, an agent of Loyola, worked as Vice President at all times relevant to this Verified Complaint. Defendant Carolyn Nelson is a citizen of Illinois.

10.     Ms. Nelson, an agent of Loyola, worked as Director of Human Resources at all times relevant to this Verified Complaint.

11.     Defendant Loyola was incorporated in the State of Illinois on June 11, 1984. At all times relevant to this Verified Complaint, Loyola was a not-for-profit corporation headquartered in Illinois.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter, as each party to the Complaint is a resident of Illinois. 735 ILCS 5/2-209.

13.     Venue is proper in this district pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2-102 because the county in which the transaction out of which this cause of action arose was Cook County, Illinois.

## FACTS

14.     Mr. Zinkel worked for Loyola for 33 years until his employment was terminated on February 20, 2015.

15.     Throughout his career at Loyola, Mr. Zinkel was responsible for a variety of significant programs for Loyola. He developed the Loyola LIFESTAR Aeromedical Program, the Loyola Mobile Medical Outreach Program, the Loyola Fitness Center Operations, and the Loyola Pediatric Mobile Health Unit. The Loyola Pediatric Mobile Health Unit has cared for over 100,000 children. Programs nationwide base their model for similar programs on the one that Mr. Zinkel developed. Mr. Zinkel drafted a manual for the mobile unit that is still used by the Ronald McDonald House Charities Global Division in order to facilitate duplications. Ronald McDonald House Charities recognized his efforts, as he was the recipient of the 2006 Spirit of Hope Award.

16.     In 2005, Mr. Zinkel became the Director of Respiratory Care and subsequently, in 2008, took on the additional role as director of Loyola Cardiology Noninvasive Care.

17.     Defendant Piper had expressed Loyola's concerns about decreasing costs for several years. During a leadership meeting Plaintiff attended sometime in 2010, Defendant Piper discussed the drawback of unproductive days off and specifically highlighted a Director of Security that was hospitalized after a cancer diagnosis who, according to Defendant Piper, was "costing us millions."

18.     In December of 2010, Mr. Zinkel provided interim coverage as Vice President of Quality, Patient Safety and Patient Satisfaction per the request of Loyola's senior leadership at the

time. Trinity Healthcare acquired Loyola in 2011 and during that period of transition, Mr. Zinkel

worked with the Vice President and Chief Medical Officer in order to reorganize and revitalize the

Center for Clinical Effectiveness. His main charge in that role was to prevent staff turnover and he

had a 100% success rate.

19.     Mr. Zinkel was diagnosed with acute lymphocytic leukemia in December of 2011.

Following this diagnosis, Mr. Zinkel's doctors, who were also employees of Loyola, advised that

his condition should be monitored, as his health was not deteriorating to the extent that

chemotherapy or some other treatment would be required. Rather, the leukemia was worsening

gradually, which continued for approximately 18 months.

20.     Beginning in March 2013, Loyola began to discharge white male employees over

40 and replace them with younger, usually female employees and usually non-white employees.

In a thirty-month period ending in December of 2015, Loyola terminated at least 17 males, many

of whom were long-time employees of Loyola, who were over forty years old at the time they

were terminated, and replaced them with younger employees.

21.     In June of 2013, Mr. Zinkel's medical condition drastically deteriorated. He was

hospitalized and placed on a three-month FMLA leave, during which he was placed on double

chemotherapy. Defendants Piper and Nelson were aware of Mr. Zinkel's medical condition from

this time forward, as they had both approved of his FMLA leave.

22.     After his FMLA leave ended in September of 2013, Mr. Zinkel returned to work.

He completed his six-month round of chemotherapy in December of 2013, and was doing well

enough that his doctors again advised that the best course was to simply monitor his condition. He

would not again require chemotherapy until late October of 2014.

23.     On September 30, 2014, Mr. Zinkel met with Defendants Komanduri, Nelson, and Piper, as well as Loyola's Chief Executive Officer ("CEO") Wendy Leutgens. The presence of the CEO, as well as that of Defendant Piper, the Human Resources Vice President, was an anomaly, as both usually would not have been involved in a meeting with Mr. Zinkel or someone else who was the director of a comparable department, about a subject like staffing in that department.

24.     Nonetheless, during that meeting, Mr. Zinkel was addressed only by Ms. Leutgens and Defendant Piper, who directed him to reduce the number of full-time equivalent employees (FTEs) on his staff by 7. At the time, this represented a cut of approximately 8.24% of his FTE staff. Mr. Zinkel tried to advise the individual Defendants and Ms. Leutgens that the metrics they were using to evaluate his staff needs only considered a minute percentage of the appropriate metrics, and that from a clinical perspective, he needed to retain his staff at its current numbers, or at least to cut fewer than the 7 positions they demanded. However, Defendants and Ms. Leutgens did not alter their position.

25.     Defendants directed him to reduce his FTEs by the wrong amount. Decision Support, the unit at Loyola charged with determining appropriate staffing throughout the hospital, subsequently informed Mr. Zinkel, after he sought their input on the same day he met with the individual Defendants and Ms. Leutgens, that the number by which he should have been advised to reduce his staff was 4. As a result, Mr. Zinkel arranged to cut his staff by 4 FTEs.

26.     In the September 30 meeting with the individual Defendants and Ms. Leutgens, Mr. Zinkel was asked to prepare an organizational plan for his department, which would demonstrate how he intended to accommodate the FTE reduction without decreasing the services that the department provided.

27.     Mr. Zinkel submitted such a plan to Defendant Komanduri, as she was his supervisor, and sought her input on that plan. She never responded to his submission prior to his next meeting with the same four individuals, which occurred approximately two weeks after the September 30 meeting. During that second meeting, Ms. Leutgens ridiculed Mr. Zinkel again, claiming to "not buy" his position that the staffing metrics should be based on approximately 100 data points to cover the services offered by the staff in Mr. Zinkel's department.

28.     Mr. Zinkel's initial plan was rejected at that meeting, which forced his reduced staff to continue to proceed under the old organizational structure, which was developed to function with 4 more staff members than were at that time employed by the department. At that meeting, Defendant Piper also treated Mr. Zinkel with disdain after he mentioned that attempts to hire other personnel for his department had not been successful, in part due to the compensation packages that were offered by Defendant Loyola being less than the potential employees could earn for the same work elsewhere.

29.     In the following weeks, Mr. Zinkel presented multiple different plans to Defendant Komanduri and all such plans were immediately rejected.

30.     Finally, on October 24, 2014, Defendant Komanduri and Mr. Zinkel had a discussion via email regarding next steps for moving forward with the most recent plan that had been submitted by Mr. Zinkel. This indicated to Mr. Zinkel that this plan might be approved, or at least, that he was making progress. At the end of the discussion, Defendant Komanduri even closed her last email on the topic by advising him to have a good weekend, as the discussion concluded near the end of that day, which was a Friday.

31.     Just eighteen minutes after Defendant Komanduri's email was sent, Mr. Zinkel was called into her office where Defendants Komanduri and Nelson waited. At this point, Mr. Zinkel

was issued a WIP that had been signed by Defendant Komanduri. However, Defendant Komanduri did not speak during this meeting. Instead, Defendant Nelson yelled and screamed at Mr. Zinkel that he was wasting everyone's time with the plans he had proposed, and threatened that he would lose his job, his benefits, and his whole career if he did not develop a reorganization plan that they approved. Based on a seminar that Mr. Zinkel and other Loyola managers had attended, he recognized Defendant Nelson utilizing the type of language one used when attempting to bait an employee into responding in kind, which would have given Defendant Nelson immediate justification to terminate Mr. Zinkel, for cause, due to what would have been called "disrespectful and insubordinate behavior." Mr. Zinkel did not respond in kind and kept his professional demeanor throughout the meeting.

32.     Mr. Zinkel had no prior indication that they considered his performance to be deficient, especially in light of the fact that less than twenty minutes before, Defendant Komanduri had indicated moving forward with the plan most recently proposed by Mr. Zinkel. The WIP contained false statements regarding Mr. Zinkel's work performance.

33.     Mr. Zinkel told the Defendants that he had been an employee for 33 years, had always received positive performance reviews, and that he was suffering from leukemia and needed his job and benefits. Mr. Zinkel began to cry and Defendants Komanduri and Nelson offered no response. Mr. Zinkel was the sole breadwinner for his wife, who was then and remains disabled, and his school-aged daughter. He understood that the path Defendants were going down would ultimately result in the loss of his 33-year career at Loyola and likely his livelihood.

34.     Over the next two days, Mr. Zinkel had trouble sleeping and was understandably distraught about the meeting at which he was issued the WIP.

35.     Three days later, on October 27, 2014, Mr. Zinkel collapsed in his office. Upon arriving at the Cancer Center, Mr. Zinkel again collapsed, and his physicians found that his leukemia had severely worsened and he would require triple chemotherapy for the next six months.

36.     When Mr. Zinkel's doctor asked what could have caused the rapid worsening of his cancer, Mr. Zinkel told him of his job stress and the most recent WIP. After hearing such news, Dr. Scott Smith completed FMLA leave paperwork for him and Mr. Zinkel was subsequently placed on a three-month leave.

37.     On December 27, 2014, only two months into the three-month leave he was approved to take, Mr. Zinkel submitted a Return to Work letter and returned to work. His plan was to work during the day shift and receive chemotherapy at night, as he was fearful that he would lose his job if he did not return as soon as he felt well enough to do so, given the comments by Defendant Piper dating back to 2010, and the meetings he had with Defendants over the preceding few months.

38.     Mr. Zinkel attached a copy of his chemotherapy schedule to his letter and sent it to Defendant Komanduri. She did not respond. Throughout January and February of 2015, Mr. Zinkel met with Defendant Komanduri to review his progress on his plan for staff reorganization and on his WIP. Those meetings were also attended by Defendant Nelson, who did the majority of the talking just as she had during the October 24 WIP meeting.

39.     On Friday, February 20, 2015, Mr. Zinkel was called into a meeting with Human Resources. At the meeting, he received a Confidential Separation Agreement and Release from Defendants Nelson and Komanduri. After Mr. Zinkel informed them that he was still receiving chemotherapy and that their actions might be in violation of the ADA, the two women left the room for approximately thirty minutes and then returned to inform Mr. Zinkel that he could extend

ELECTRONICALLY FILED
9/30/2016 7:25 PM
2016-L-009718
PAGE 10 of 17

his FMLA leave for another three months. However, they also notified Mr. Zinkel that at the end of the three-month extension, they could either finalize the separation agreement or start a long-term disability claim.

40.     Mr. Zinkel asked if he would be allowed to return to Loyola following his FMLA leave and Defendants Nelson and Komanduri replied that he would be terminated once his leave expired.

41.     In March of 2015, less than a month after Mr. Zinkel's termination, Acting Director Bob Obias, Mr. Zinkel's interim replacement, implemented the very organizational plan that was the purported basis for Defendants' decision to terminate Mr. Zinkel's employment. The 100-point metric that Mr. Zinkel had been proposing since the September 30, 2014 meeting, that Defendants repeatedly rejected, was also adopted soon after Mr. Zinkel's termination. Both were accepted by Defendants when proposed by Mr. Zinkel's replacement. On the basis of those data points, under that metric, Defendant Loyola advised Mr. Obias that his department was understaffed.

## COUNT I – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Defendants Piper, Komanduri, and Nelson)

42.     Mr. Zinkel restates and realleges by reference paragraphs 1 through 41 as paragraph 42 of Count I.

43.     Defendants occupied a position of authority giving them the power to affect Mr. Zinkel's continued employment and compensation with Loyola. The individual Defendants were agents of Defendant Loyola and used the positions and authority bestowed upon them by Defendant Loyola to cause severe emotional distress to Mr. Zinkel.

44.     As of their September 30, 2014 meeting with Mr. Zinkel, wherein they advised him to cut seven FTEs from his department, Defendants had recently demonstrated a pattern of

discharging employees in Mr. Zinkel's demographic. Defendants had also expressed goals of cutting what they referred to as "non-productive days off," which included sick days.

45.     Mr. Zinkel was diagnosed with leukemia in late 2011 and was experiencing the stress that comes with a cancer diagnosis from that point forward. Defendants Nelson and Piper were aware of his condition as of their approval of his June 2013 FMLA leave, and Defendant Komanduri was informed by Mr. Zinkel that he had leukemia during the October 24, 2014 WIP meeting.

46.     Defendants knew that directing Mr. Zinkel to fire seven FTEs would add emotional distress to his already vulnerable state.

47.     After verifying the correct number of FTEs was four, Mr. Zinkel drafted plans that would ensure that his department would continue running in the same manner as directed by Defendants.

48.     Defendants intentionally denied any plans that Mr. Zinkel proposed to make him seem ineffective.

49.     The conduct Defendants engaged in, including consistently denying Mr. Zinkel's plans while he was in an already emotionally and physically vulnerable state, issuing a WIP with false statements regarding his performance, yelling at him and attacking him during meetings, attempting to terminate Mr. Zinkel while he was receiving increased chemotherapy and had just returned to work early from an FMLA leave, and ultimately approving his plans when later presented by his successor, after ridiculing and denying those same plans when proposed by Mr. Zinkel was extreme and outrageous.

50.     Defendants meant to cause, or recklessly or consciously disregarded the probability that their treatment of Mr. Zinkel may cause, severe emotional distress to a man who previously

advised them that maintaining his job and his health benefits was critical to his ability to survive his leukemia diagnosis, and could also cause him additional stress that could and did exacerbate his already fragile medical condition.

51.     As a proximate result of the Defendants' conduct, Mr. Zinkel has suffered severe and extreme emotional distress, in the form of fright, worry, shame, hopelessness, despair, humiliation, and panic that he might die if he lost his job and his benefits, rendering him unable to pay for his continued medical care. Those emotions manifested in Mr. Zinkel breaking down and crying at the October 24, 2014 meeting, Mr. Zinkel collapsing in his office, and ultimately a severe worsening of his previously diagnosed leukemia.

52.     No reasonable person could have been expected to endure the treatment Mr. Zinkel received, given his medical condition of which Defendants were aware when they caused him additional stress and severe emotional distress.

**WHEREFORE**, Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendants Piper, Komanduri, and Nelson, jointly and severally, as follows:

A.     An award of compensatory damages in an amount to be proven at trial, but which is in excess of $30,000;

B.     Costs; and

C.     Such other, further and additional relief as may be just in law and in equity.

### COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BY *RESPONDEAT SUPERIOR* (Against Defendant Loyola)

53.     Mr. Zinkel restates and realleges by reference paragraphs 1 through 52 as paragraph 53 of Count II.

54. When the individual Defendants caused Mr. Zinkel severe emotional distress through their pattern of extreme and outrageous conduct as detailed *supra*, either with the intent to cause, or the knowledge of a high degree of probability that their conduct would cause, severe emotional distress to Mr. Zinkel, they were acting within the scope of their employment with Defendant Loyola.

55. As the individual Defendants acted within the scope of their employment while committing intentional infliction of emotional distress against Mr. Zinkel, their conduct may be imputed to Defendant Loyola by the theory of *respondeat superior*.

**WHEREFORE**, Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendant Loyola, as follows:

A. An award of compensatory damages in an amount to be proven at trial, but which is in excess of $30,000;

B. Costs; and

C. Such other, further and additional relief as may be just in law and in equity.

### COUNT III – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY
### (Against Defendants Piper, Komanduri, and Nelson)

56. Mr. Zinkel restates and realleges by reference paragraphs 1 through 55 as paragraph 56 of Count III.

57. Mr. Zinkel was an employee with Loyola for over thirty-three years. All parties were aware of said employment relationship.

58. Defendants had no justification including false information within the WIP that they issued to Mr. Zinkel.

ELECTRONICALLY FILED
9/30/2016 7:25 PM
2016-L-009718
PAGE 14 of 17

59.     Defendants had no justification for denying Mr. Zinkel's plans to address the concerns they raised with him on September 30, 2014, while also allowing his department to maintain its previous level of service to patients. Their lack of justification for said denial was evidenced when one of his plans was adopted and implemented when proposed by his interim successor following his termination.

60.     Considering Mr. Zinkel's clinical qualifications, experience, and lack of valid performance criticisms, the individual Defendants acted in direct contradiction to the interests of Defendant Loyola.

61.     Prior to the meetings on September 30, 2014, October 24, 2014, and February 20, 2015, Mr. Zinkel reasonably expected to continue his employment with Loyola. Defendants knew of his intention to maintain his employment with Loyola as he expressed such an intention at the September 30, 2014 meeting, at which he advised Defendants of his desire to keep his job and to retain all the benefits associated with that position to allow him to continue to work, while also undergoing treatment for his medical condition.

62.     The individual Defendants interfered with and terminated Mr. Zinkel's employment and thereby interfered with the continued development of his business relationship with Defendant Loyola. They did so to further their own interests in presenting a reduced budget to corporate headquarters because by reducing costs they would receive higher bonuses. It was not in the interest of Defendant Loyola to violate state and federal discrimination laws and expose Defendant Loyola to damages. Nor was it in Loyola's interest to terminate the employment of a 33-year veteran who had contributed so much to the hospital and the community.

ELECTRONICALLY FILED
9/30/2016 7:25 PM
2016-L-009718
PAGE 15 of 17

63.    As a result of tortious interference by the individual Defendants, Mr. Zinkel has damages including, but not limiting to, substantial loss of economic opportunity and damage to his professional reputation.

**WHEREFORE**, Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendants Piper, Komanduri, and Nelson as follows:

A.    An award of compensatory damages in an amount to be proven at trial;

B.    Punitive damages; and

C.    Such other and further relief as may be just in law and in equity.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 30, 2016          **JOHN ZINKEL**

                                   One of His Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, PC
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_John Zinkel_

_9/30/2016_
Date

ELECTRONICALLY FILED
9/30/2016 7:25 PM
2016-L-009718
PAGE 17 of 17

## Camille Khodadad

| | |
|---|---|
| **From:** | Camille Khodadad |
| **Sent:** | Tuesday, October 04, 2016 2:40 PM |
| **To:** | 'rmajor@major-law.com' |
| **Cc:** | Diana Castillo |
| **Subject:** | Zinkel v. Piper et al. - Circuit Court of Cook County |

Ruth,

In confirmation of our telephone conversation today, I will accept service on behalf of the defendants.

Please do not hesitate to let me know if you have any questions or comments.

Best regards,

Camille

**Camille N. Khodadad**
Hall Prangle & Schoonveld, LLC
200 South Wacker Drive, Suite 3300
Chicago, Illinois 60606
Direct: (312) 267-6333
Cell: 312-804-6089
Facsimile: (312) 277-7135
E-mail: ckhodadad@hpslaw.com

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and, if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or attachments.

1



DEFENDANT'S
EXHIBIT
B

**Camille Khodadad**

| | |
|---|---|
| **From:** | Daniel Broadwell <dbroadwell@major-law.com> |
| **Sent:** | Tuesday, October 11, 2016 4:05 PM |
| **To:** | Camille Khodadad |
| **Cc:** | Ruth Major |
| **Subject:** | Zinkel v. Piper et al., 2016-L-009718/ Verified Complaint, Civil Cover Sheet, and Summonses |
| **Attachments:** | File-Stamped Verified Complaint.pdf; Civil Action Cover sheet.pdf; Summons Piper.pdf; Summons Komanduri.pdf; Summons Nelson.pdf; Summons Loyola University Health System.pdf |

Dear Ms. Khodadad,

As you have confirmed with Ms. Major that you have accepted service on behalf of all Defendants in the above-referenced matter, I have attached a copy of the Verified Complaint, Civil Cover Sheet, and the Summonses for the Defendants in this matter.

Please contact me if you have any questions.

Very truly yours,

Dan Broadwell

MajorLaw | Daniel R. Broadwell
**Associate Attorney**
**The Law Offices of Ruth I. Major PC**
30 W. Monroe St., Suite 1650
Chicago, IL 60603
Tel. 312.893.7544
Tel. 312.893.7521 Direct
Fax. 312.698.9867
dbroadwell@major-law.com
www.major-law.com

Confidentiality Note: Nothing in this e-mail should be construed as U.S. federal tax advice (including any attachment). Neither this e-mail nor any attachment is intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promotion, marketing or recommending to another party any transaction or matter addressed herein. This e-mail (including any attachment), contains privileged and confidential information and/or attorney work product intended only for the use of the individuals or entities named on the e-mail. If the reader of this message is not the intended recipient, or the employer or agent responsible for delivering the message to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

1



DEFENDANT'S
EXHIBIT
C

**Civil Action Cover Sheet - Case Initation** (05/27/16) CCL 0520

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

JOHN ZINKEL

v.                                                    **No.** _____

LOYOLA UNIVERSITY HEALTH SYSTE

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the
complaint in all civil actions. Th e information contained herein
is for administrative purposes only and cannot be introduced into
evidence. Please check the box in front of the appropriate case
type which best characterizes your action. Only one (1) case type
may be checked with this cover sheet.

**ELECTRONICALLY FILED**
**9/30/2016 7:25 PM**
**2016-L-009718**
**CALENDAR: R**
**CIRCUIT COURT OF**
**COOK COUNTY, ILLINOIS**
**LAW DIVISION**
**CLERK DOROTHY BROWN**

(FILE STAMP)

Jury Demand  ☑ Yes  ☐ No

### PERSONAL INJURY/WRONGFUL DEATH

CASE TYPES:

- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
       ( including Structural Work Act, Road
       Construction Injuries Act and Negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☑ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
       ( Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES

CASE TYPES:

- ☐ 007 Confession Of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

### COMMERCIAL LITIGATION

CASE TYPES:

- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
       (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
       ( Please Specify Below**)
- ☐ 075 Other Commercial Litigation
       ( Please Specify Below**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS

CASE TYPES:

- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** _____

Primary Email: _____ rmajor@major-law.com

Secondary Email: _____ rfell@major-law.com

By: _____ /s RUTH IRENE MAJOR _____     Tertiary Email: _____ iziminski@major-law.com

(Attorney)                    (ProSe)

**Pro Se Only:** ☐ I have read and agree to the terms of the *the Clerk's Offi ce Electronic Notice Policy* and choose to opt in to electronic notice
form the Clerk's Office for this case at this email address: _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**Summons - Alias Summons**                                                      **(12/31/15) CCG N001**

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JOHN ZINKEL
_____

v.                                   **No.** 2016-L-009718
_____

LOYOLA UNIVERSITY HEALTH SYSTE;      Defendant Address:
VICKY PIPER; PRADIPTA KOMANDURI;     LOYOLA UNIVERSITY HEALTH SYSTE
CAROLYN NELSON                       R/A C T CORPORATION SYSTEM
                                     208 S LASALLE STREET
                                     SUITE 814
                                     CHICAGO, IL 60604

☑ **SUMMONS** ☐ **ALIAS - SUMMONS**

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie          ☐ District 3 - Rolling Meadows        ☐ District 4 - Maywood
   5600 Old Orchard Rd.           2121 Euclid 1500                       Maybrook Ave.
   Skokie, IL 60077               Rolling Meadows, IL 60008              Maywood, IL 60153

☐ District 5 - Bridgeview      ☐ District 6 - Markham                 ☐ Richard J. Daley Center
   10220 S. 76th Ave.             16501 S. Kedzie Pkwy.                  50 W. Washington, LL-01
   Bridgeview, IL 60455           Markham, IL 60428                      Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☐ Atty. No.: 45037                           Witness:                Friday, 30 September 2016

Name: MAJOR RUTH I PC LAW OFFICES

Atty. for: JOHN ZINKEL                        DOROTHY BROWN, Clerk of Court

Address: 30 W MONROE ST #1650

City/State/Zip Code: CHICAGO, IL 60603        Date of Service: _____

Telephone: (312) 893-7544                     (To be inserted by officer on copy left with Defendant or other person)

Primary Email Address: rmajor@major-law.com

Secondary Email Address(es):                  **Service by Facsimile Transmission will be accepted at:

rfell@major-law.com                           _____   _____
                                              (Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**Page 1 of 1**

Summons - Alias Summons          (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JOHN ZINKEL

v.

LOYOLA UNIVERSITY HEALTH SYSTE;
VICKY PIPER; PRADIPTA KOMANDURI;
CAROLYN NELSON

No. 2016-L-009718

Defendant Address:
PRADIPTA KOMANDURI
2160 S. FIRST AVENUE
MAYWOOD, IL 60153

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

    YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 ,Chicago, Illinois 60602

☐ District 2 - Skokie
    5600 Old Orchard Rd.
    Skokie, IL 60077

☐ District 3 - Rolling Meadows
    2121 Euclid 1500
    Rolling Meadows, IL 60008

☐ District 4 - Maywood
    Maybrook Ave.
    Maywood, IL 60153

☐ District 5 - Bridgeview
    10220 S. 76th Ave.
    Bridgeview, IL 60455

☐ District 6 - Markham
    16501 S. Kedzie Pkwy.
    Markham, IL 60428

☐ Richard J. Daley Center
    50 W. Washington, LL-01
    Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☐ Atty. No.: 45037
Name: MAJOR RUTH I PC LAW OFFICES
Atty. for: JOHN ZINKEL
Address: 30 W MONROE ST #1650
City/State/Zip Code: CHICAGO, IL 60603
Telephone: (312) 893-7544
Primary Email Address: rmajor@major-law.com
Secondary Email Address(es):

rfell@major-law.com

Witness: Friday, 30 September 2016

DOROTHY BROWN, Clerk of Court

Date of Service:
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**Page 1 of 1**

Summons - Alias Summons                                                                    (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JOHN ZINKEL

v.

No. 2016-L-009718

LOYOLA UNIVERSITY HEALTH SYSTE;

VICKY PIPER; PRADIPTA KOMANDURI;

CAROLYN NELSON

Defendant Address:

CAROLYN NELSON

2160 S. FIRST AVENUE

MAYWOOD, IL 60153

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____,Chicago, Illinois 60602

☐ District 2 - Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077

☐ District 3 - Rolling Meadows
  2121 Euclid 1500
  Rolling Meadows, IL 60008

☐ District 4 - Maywood
  Maybrook Ave.
  Maywood, IL 60153

☐ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455

☐ District 6 - Markham
  16501 S. Kedzie Pkwy.
  Markham, IL 60428

☐ Richard J. Daley Center
  50 W. Washington, LL-01
  Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☐ Atty. No.: 45037

Name: MAJOR RUTH I PC LAW OFFICES

Atty. for: JOHN ZINKEL

Address: 30 W MONROE ST #1650

City/State/Zip Code: CHICAGO, IL 60603

Telephone: (312) 893-7544

Primary Email Address: rmajor@major-law.com

Secondary Email Address(es):

rfell@major-law.com

Witness: Friday, 30 September 2016

DOROTHY BROWN, Clerk of Court

Date of Service: 

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**Page 1 of 1**

Summons - Alias Summons                                                                 (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JOHN ZINKEL

v.                                             No. 2016-L-009718

LOYOLA UNIVERSITY HEALTH SYSTE;                 Defendant Address:
VICKY PIPER; PRADIPTA KOMANDURI;                VICKY PIPER
CAROLYN NELSON                                   2160 S. FIRST AVENUE
                                                 MAYWOOD, IL 60153

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie           ☐ District 3 - Rolling Meadows      ☐ District 4 - Maywood
   5600 Old Orchard Rd.            2121 Euclid 1500                     Maybrook Ave.
   Skokie, IL 60077                Rolling Meadows, IL 60008            Maywood, IL 60153

☐ District 5 - Bridgeview       ☐ District 6 - Markham              ☐ Richard J. Daley Center
   10220 S. 76th Ave.             16501 S. Kedzie Pkwy.                50 W. Washington, LL-01
   Bridgeview, IL 60455           Markham, IL 60428                    Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☐ Atty. No.: 45037                              Witness:        Friday, 30 September 2016

Name: MAJOR RUTH I PC LAW OFFICES

Atty. for: JOHN ZINKEL                          DOROTHY BROWN, Clerk of Court

Address: 30 W MONROE ST #1650

City/State/Zip Code: CHICAGO, IL 60603          Date of Service: _____

Telephone: (312) 893-7544                       (To be inserted by officer on copy left with Defendant or other person)

Primary Email Address: rmajor@major-law.com

Secondary Email Address(es):                    **Service by Facsimile Transmission will be accepted at:

rfell@major-law.com                             _____

                                                (Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

DEFENDANT'S
EXHIBIT
tabbles
D

Rev. 6/16

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT—LAW DIVISION

Plaintiffs
ZimVie

-v-

Leonida et al
Defendants

(
(        NO:  _____  17 L 1718_____
(
(        Motion Call: "R" Time: 9:30 Line #: 11
(        2005 Trial Date: _____ N/A

## **CASE MANAGEMENT ORDER**

**\*\*(Please check off all pertinent paragraphs and circle proper party name)\*\***

(4231) ___ 1. Written, 213(f)(1), (f)(2) and 214 discovery to be issued by _____ or deemed waived;

(4296) ___ 2. Written, 213(f)(1), (f)(2) and 214 discovery to be answered by _____ ;

(4218) ___ 3. Party depositions, fact, 213(f)(1) and/or (2) depositions to be completed by _____ ;

(4288) ___ 4. Subpoenas for treating physicians, deps to be issued by _____ or deemed waived;

(4218) ___ 5. Treating physicians depositions to be completed by _____ ;

(4231) ___ 6. All dispositive motions shall be filed no later than _____ ;

(4296) ___ 7. All SCR 215 & 216 discovery completed by _____ ;

(4206) ___ 8. (Plaintiff) – (Defendant) - (Add. Party) shall answer 213 (f)(3) Interrogatories by _____ ;

(4218) ___ 9. Plaintiff's 213(f)(3) witnesses' depositions to be completed by _____ ;

(4218) ___ 10. Defendant's 213(f)(3) witnesses' depositions to be completed by _____ ;

(4218) ___ 11. Add. party's 213(f)(3) witnesses' depositions to be completed by _____ ;

(4295) ___ 12. All fact discovery, SCR 213(f)(1), (f)(2), 215(a) and 216 discovery is closed. *(Circle all applicable)*

(4619) ___ 13. The matter is continued for subsequent Case Management Conference on ___/___/___ at ____ AM/PM in Room 2208 for:

    (A) ___ Proper Service    (B) ___ Appearance of Defendants    (C) ___ Case Value

    (D) ___ Pleadings Status    (E) ___ Discovery Status    (F) ___ Pre-Trial/Settlement

    (G) ___ Mediation Status    (H) ___ Trial Certification    (I) ___ Other

Def'ts to appear + answer or otherwise plead by Jan ___, Lc...

(4005) ___ 14. Case is DWP'd. ___ (4040) The case is voluntarily dismissed pursuant to 735 ILCS 5/2-1009.

(4331) ___ 15. Case stricken from (4284) ___ Motion Stricken or (4330) ___ Case stricken from
    CMC Call      Withdrawn from Call      Motion Call.

NAME: _____
ADDRESS: _____
PHONE: _____
ATTY ID#: _____
ATTY FOR PARTY: _____
NOTICE:

✱ COPIES OF ALL PRIOR CMC ORDERS MUST BE BROUGHT TO ALL CMC COURT DATES.

✱ FAILURE OF ANY PARTY TO COMPLY WITH THIS CMC ORDER WILL BE A BASIS FOR SCR 219(C) SANCTIONS. FAILURE OF ANY PARTY TO ENFORCE THIS CMC ORDER WILL CONSTITUTE A WAIVER OF SUCH DISCOVERY BY THAT PARTY.

E N T E R:

J U D G E _____ NO. _____

ENTERED
JUDGE LARRY AXELROOD-1999
NOV 30 2016
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Order            (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JOHN ZINKEL                No. 2016 L 9718

v.

LOYOLA UNIVERSITY HEALTH SYSTEM,
ET AL.

### ORDER

THIS MATTER COMING BEFORE THE COURT FOR STATUS ON PLEADINGS AND PRESENTMENT OF
DEFENDANTS' MOTION TO DISMISS, DUE NOTICE BEING GIVEN AND THE COURT BEING FULLY ADVISED
IN THE PREMISES, IT IS ORDERED:

① PLAINTIFF IS GRANTED LEAVE TO AMEND HIS COMPLAINT ON OR BEFORE JANUARY 18, 2017;

② DEFENDANTS' MOTION TO DISMISS IS ENTERED AND CONTINUED TO FEBRUARY 3rd 2017,
AT 10:00 A.M.; AND

③ THIS MATTER IS CONTINUED FOR STATUS ON PLEADINGS TO FEBRUARY 3, 2017 AT
10:00 A.M.

Attorney No.: 45037

Name: THE LAW OFFICES OF RUTH I. MAJOR, P.C.

Atty. for: PLAINTIFF

Address: 30 W. MONROE ST., SUITE 1650

City/State/Zip: CHICAGO, IL 60603

Telephone: (312) 893-7544

ENTERED:

Dated: _____

ENTERED
JUDGE LARRY AXELROOD-1900

JAN 06 2017

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY
DEPUTY CLERK

Judge           Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILL

DEFENDANT'S
EXHIBIT
E



**E-Notice**

2016-L-009718

CALENDAR: R

To: HALL PRANGLE SCHOONVELD LLC
bhendricks@hpslaw.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

JOHN ZINKEL vs. LOYOLA UNIVERSITY HEALTH SYSTE
2016-L-009718

The transmission was received on 01/17/2017 at 1:57 PM and was ACCEPTED with
the Clerk of the Circuit Court of Cook County on 01/17/2017 at 3:41 PM.

**AMENDED COMPLAINT (Amended Verified Complaint at Law)**

**NOTICE OF FILING FILED (Notice of Filing)**

Filer's Email: rmajor@major-law.com
Filer's Fax:
Notice Date: 1/17/2017 3:41:23 PM
Total Pages: 26

**DOROTHY BROWN**
**CLERK OF THE CIRCUIT COURT**
COOK COUNTY
RICHARD J. DALEY CENTER, ROOM 1001
CHICAGO, IL 60602

(312) 603-5031
courtclerk@cookcountycourt.com



DEFENDANT'S
EXHIBIT
F

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
CALENDAR: R
PAGE 1 of 23
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| JOHN ZINKEL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 2016 L 009718 |
| v. | ) | |
| | ) | Honorable Larry G. Axelrood |
| VICKY PIPER, an individual, PRADIPTA | ) | |
| KOMANDURI, an individual, CAROLYN | ) | |
| NELSON, an individual, and LOYOLA | ) | |
| UNIVERSITY HEALTH SYSTEM, an | ) | |
| Illinois corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED VERIFIED COMPLAINT AT LAW

Plaintiff John Zinkel, by his attorneys, The Law Offices of Ruth I. Major, P.C., for his Amended Verified Complaint at Law against Defendants, Vicky Piper, Pradipta Komanduri, Carolyn Nelson, and Loyola University Health System ("Loyola") alleges as follows:

### INTRODUCTION

1.     Mr. Zinkel was employed by Loyola for 33 years during which time he was repeatedly promoted and held various positions within the hospital.  His most recent title was Director of Respiratory Care.

2.     During Mr. Zinkel's employment, he helped redesign the Loyola LIFESTAR Aeromedical Program, which provides critical care transport service, after he discovered that the original helicopter transport service was improperly overcharging the hospital millions of dollars per year. Mr. Zinkel's contributions to the new LIFESTAR program included assisting the new vendor in the building of the helicopter, whereby he had input into the design specifications, and assisting in the hiring of the pilots who would be flying the new helicopter. Mr. Zinkel also

developed the Loyola Pediatric Mobile Health Unit, which is a pediatric doctor's office on wheels that serves underprivileged communities in the Chicago area. The first of its kind in the Midwest, it provides vital healthcare services to children and young adults, from birth to age 21, who might otherwise not have access to healthcare in their community. It has served 113,000 patients since its inception. Mr. Zinkel also developed the Loyola Fitness Center Operations. The Loyola Fitness Center is a beautiful, state-of-the-art fitness club in Maywood, near Oak Park, with endless amenities and services to fit the community's needs. It is the only certified Medical Fitness Association (MFA) facility in its area.

3.      Mr. Zinkel was also recognized for his contribution to Loyola on multiple occasions, as the recipient of multiple awards, including Loyola's 2005 Spirit of Dr. Martin Luther King Award, Ronald McDonald House Charities' 2006 Spirit of Hope Award for his work with the Loyola Pediatric Mobile Health Unit, and Loyola's 2008 Magis Leadership Award.

4.      Beginning in March 2013, Loyola began to discharge white male employees over 40, many of whom were long time employees of Loyola like Mr. Zinkel, and replace them with younger, often female employees, and often non-white employees. Many of these employees had devoted a large part of their professional careers to Loyola and were primary breadwinners for their families. At that time, Human Resources expressed a goal of cutting costs, including by reducing sick leave. Mr. Zinkel was very concerned about the company targeting sick leave, especially because he was diagnosed with leukemia in 2011.

5.      On or about September 30, 2014, Mr. Zinkel was directed to reduce his staff by seven full-time equivalent employees ("FTEs"), which was almost twice the amount that had been recommended by the Loyola unit responsible for determining appropriate staffing hospital-wide.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 2 of 23

At that time, both Defendant Piper and Defendant Nelson were already aware of his medical condition.

6.      Following the meeting, Mr. Zinkel drafted several plans for staff reorganization but those plans were always met with subjective criticism. Not a single one of his plans was deemed acceptable by his supervisor, Defendant Komanduri. Based on his purported failures in connection with the reorganization, Mr. Zinkel was placed on a Work Improvement Plan (hereinafter referred to as "WIP"). He had never received any performance-related criticism prior to the issuance of the WIP in his 33 years of employment, and the WIP contained false statements regarding his performance. As a result of the stress induced by his receipt of the WIP and the WIP meeting itself, Mr. Zinkel's leukemia substantially worsened. Only three days after the WIP was instituted, Mr. Zinkel collapsed twice, once in his office and once at the doctor's office, causing his doctor to place him on triple chemotherapy and a three-month leave per the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* (hereinafter referred to as "FMLA). Mr. Zinkel attempted to return to work only two months into his FMLA leave, as he feared for his job. He obtained his doctor's permission by volunteering to work during the day and receive his chemotherapy at night. After returning to work, Mr. Zinkel continued to submit reorganization plans for his department, and those plans were continually rejected by Defendant Komanduri and Defendant Nelson. Finally, on February 20, 2015, Mr. Zinkel received a separation agreement and release from Defendants Nelson and Komanduri. The time period for improving performance under the WIP had not expired, and had in fact barely started, at the time he went on the FMLA-approved leave. After informing both women that he was still receiving chemotherapy and their conduct may be in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (hereinafter referred to as the "ADA"), they allowed a three-month extension of Mr. Zinkel's FMLA leave but he was

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 3 of 23

not permitted to return to work. Mr. Zinkel was told that after his leave expired, his employment would be terminated. Defendants maintained that the termination occurred for performance reasons, yet in March 2015, the very month after he was told his employment was being terminated, Acting Director of Respiratory Care Bob Obias, Mr. Zinkel's significantly younger, non-white, and non-disabled replacement, implemented the very same reorganization plan that had been used as the basis for Mr. Zinkel's performance plan. Prior to the termination of Mr. Zinkel's employment, he also suffered a work injury and was criticized for his injury. Mr. Zinkel has also brought a wrongful termination claim based on Illinois common law.

<strong>PARTIES</strong>

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 4 of 23

7.     Plaintiff John Zinkel is a citizen of Illinois.  He was an employee of Loyola for 33 years before his employment was involuntarily terminated, holding the position of Director of Respiratory Care just prior to the termination of his employment.

8.     Defendant Vicky Piper is a citizen of Illinois. Ms. Piper, an agent of Loyola, worked as the Human Resources Vice President at all times relevant to this Amended Verified Complaint.

9.     Defendant Pradipta Komanduri is a citizen of Illinois. Ms. Komanduri, an agent of Loyola, worked as Vice President at all times relevant to this Amended Verified Complaint.

10.     Defendant Carolyn Nelson is a citizen of Illinois. Ms. Nelson, an agent of Loyola, worked as Director of Human Resources at all times relevant to this Amended Verified Complaint.

11.     Defendant Loyola was incorporated in the State of Illinois on June 11, 1984.  At all times relevant to this Amended Verified Complaint, Loyola was a not-for-profit corporation headquartered in Illinois.

4

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter, as each party to the Complaint is a resident of Illinois. 735 ILCS 5/2-209.

13.     Venue is proper in this district pursuant to 735 ILCS 5/2-101 and 735 ILCS 5/2-102 because the county in which the transaction out of which this cause of action arose was Cook County, Illinois.

## FACTS

14.     Mr. Zinkel worked for Loyola for 33 years until his employment was terminated on February 20, 2015.

15.     Throughout his career at Loyola, Mr. Zinkel was responsible for a variety of significant programs for Loyola. He developed the Loyola LIFESTAR Aeromedical Program, the Loyola Mobile Medical Outreach Program, the Loyola Fitness Center Operations, and the Loyola Pediatric Mobile Health Unit. The Loyola Pediatric Mobile Health Unit has cared for over 100,000 children. Programs nationwide base their model for similar programs on the one that Mr. Zinkel developed. Mr. Zinkel drafted a manual for the mobile unit that is still used by the Ronald McDonald House Charities Global Division in order to facilitate duplications. Ronald McDonald House Charities recognized his efforts, as he was the recipient of the 2006 Spirit of Hope Award.

16.     In 2005, Mr. Zinkel became the Director of Respiratory Care and subsequently, in 2008, took on the additional role as director of Loyola Cardiology Noninvasive Care.

17.     Defendant Piper had expressed Loyola's concerns about decreasing costs for several years. During a leadership meeting Plaintiff attended sometime in 2010, Defendant Piper discussed the drawback of unproductive days off and specifically highlighted a Director of

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 5 of 23

5

Security that was hospitalized after a cancer diagnosis who, according to Defendant Piper, was "costing us millions."

18.     In December of 2010, Mr. Zinkel provided interim coverage as Vice President of Quality, Patient Safety, and Patient Satisfaction per the request of Loyola's senior leadership at the time. Trinity Healthcare acquired Loyola in 2011 and during that period of transition, Mr. Zinkel worked with the Vice President and Chief Medical Officer in order to reorganize and revitalize the Center for Clinical Effectiveness. His main charge in that role was to prevent staff turnover and he had a 100% success rate.

19.     Mr. Zinkel was diagnosed with acute lymphocytic leukemia in December of 2011. Following this diagnosis, Mr. Zinkel's doctors, who were also employees of Loyola, advised that his condition should be monitored, as his health was not deteriorating to the extent that chemotherapy or some other treatment would be required. Rather, the leukemia was worsening gradually, which continued for approximately 18 months.

20.     Beginning in March 2013, Loyola began to discharge white male employees over 40 and replace them with younger, usually female employees and usually non-white employees. In a thirty-month period ending in December of 2015, Loyola terminated the employment of at least 17 males, many of whom were long-time employees of Loyola, who were over forty years old at the time their employment was terminated, and replaced them with younger employees.

21.     In June of 2013, Mr. Zinkel's medical condition drastically deteriorated. He was hospitalized and placed on a three-month FMLA leave, during which he was placed on double chemotherapy. Defendants Piper and Nelson were aware of Mr. Zinkel's medical condition from this time forward, as they had both approved of his FMLA leave.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 6 of 23

6

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 7 of 23

22. After his FMLA leave ended in September of 2013, Mr. Zinkel returned to work. He completed his six-month round of chemotherapy in December of 2013, and was doing well enough that his doctors again advised that the best course was to simply monitor his condition. He would not again require chemotherapy until late October of 2014.

23. On September 30, 2014, Mr. Zinkel met with Defendants Komanduri, Nelson, and Piper, as well as Loyola's Chief Executive Officer ("CEO") Wendy Leutgens. The presence of the CEO, as well as that of Defendant Piper, the Human Resources Vice President, was an anomaly, as both usually would not have been involved in a meeting with Mr. Zinkel or someone else who was the director of a comparable department, about a subject like staffing in that department.

24. Nonetheless, during that meeting, Mr. Zinkel was addressed only by Ms. Leutgens and Defendant Piper, who directed him to reduce the number of full-time equivalent employees (FTEs) on his staff by 7. At the time, this represented a cut of approximately 8.24% of his FTE staff. Mr. Zinkel tried to advise the individual Defendants and Ms. Leutgens that the metrics they were using to evaluate his staff needs only considered a minute percentage of the appropriate metrics, and that from a clinical perspective, he needed to retain his staff at its current numbers, or at least to cut fewer than the 7 positions they demanded. However, Defendants and Ms. Leutgens did not alter their position.

25. Defendants directed him to reduce his FTEs by the wrong amount. Decision Support, the unit at Loyola charged with determining appropriate staffing throughout the hospital, subsequently informed Mr. Zinkel, after he sought their input on the same day he met with the individual Defendants and Ms. Leutgens, that the number by which he should have been advised to reduce his staff was 4. As a result, Mr. Zinkel arranged to cut his staff by 4 FTEs.

7

26.    In the September 30 meeting with the individual Defendants and Ms. Leutgens, Mr. Zinkel was asked to prepare an organizational plan for his department, which would demonstrate how he intended to accommodate the FTE reduction without decreasing the services that the department provided.

27.    Mr. Zinkel submitted such a plan to Defendant Komanduri, as she was his supervisor, and sought her input on that plan. She never responded to his submission prior to his next meeting with the same four individuals, which occurred approximately two weeks after the September 30 meeting. During that second meeting, Ms. Leutgens ridiculed Mr. Zinkel again, claiming to "not buy" his position that the staffing metrics should be based on approximately 100 data points to cover the services offered by the staff in Mr. Zinkel's department.

28.    Mr. Zinkel's initial plan was rejected at that meeting, which forced his reduced staff to continue to proceed under the old organizational structure, which was developed to function with 4 more staff members than were at that time employed by the department. At that meeting, Defendant Piper also treated Mr. Zinkel with disdain after he mentioned that attempts to hire other personnel for his department had not been successful, in part due to the compensation packages that were offered by Defendant Loyola being less than the potential employees could earn for the same work elsewhere.

29.    In the following weeks, Mr. Zinkel presented multiple different plans to Defendant Komanduri and all such plans were immediately rejected.

30.    Finally, on October 24, 2014, Defendant Komanduri and Mr. Zinkel had a discussion via email regarding next steps for moving forward with the most recent plan that had been submitted by Mr. Zinkel. This indicated to Mr. Zinkel that this plan might be approved, or at least, that he was making progress. At the end of the discussion, Defendant Komanduri even closed

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 8 of 23

8

her last email on the topic by advising him to have a good weekend, as the discussion concluded near the end of that day, which was a Friday.

31.     Just eighteen minutes after Defendant Komanduri's email was sent, Mr. Zinkel was called into her office where Defendants Komanduri and Nelson waited. At this point, Mr. Zinkel was issued a WIP that had been signed by Defendant Komanduri. However, Defendant Komanduri did not speak during this meeting. Instead, Defendant Nelson yelled and screamed at Mr. Zinkel that he was wasting everyone's time with the plans he had proposed, and threatened that he would lose his job, his benefits, and his whole career if he did not develop a reorganization plan that they approved. Based on a seminar that Mr. Zinkel and other Loyola managers had attended, he recognized Defendant Nelson utilizing the type of language one used when attempting to bait an employee into responding in kind, which would have given Defendant Nelson immediate justification to terminate Mr. Zinkel's employment, for cause, due to what would have been called "disrespectful and insubordinate behavior." Mr. Zinkel did not respond in kind and kept his professional demeanor throughout the meeting.

32.     Mr. Zinkel had no prior indication that they considered his performance to be deficient, especially in light of the fact that less than twenty minutes before, Defendant Komanduri had indicated moving forward with the plan most recently proposed by Mr. Zinkel. The WIP contained false statements regarding Mr. Zinkel's work performance.

33.     Mr. Zinkel told the Defendants that he had been an employee for 33 years, had always received positive performance reviews, and that he was suffering from leukemia and needed his job and benefits. Mr. Zinkel began to cry and Defendants Komanduri and Nelson offered no response.  Mr. Zinkel was the sole breadwinner for his wife, who was then and remains

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 9 of 23

9

disabled, and his school-aged daughter. He understood that the path Defendants were going down would ultimately result in the loss of his 33-year career at Loyola and likely his livelihood.

34.     Over the next two days, Mr. Zinkel had trouble sleeping and was understandably distraught about the meeting at which he was issued the WIP.

35.     Three days later, on October 27, 2014, Mr. Zinkel collapsed in his office. Upon arriving at the Cancer Center, Mr. Zinkel again collapsed, and his physicians found that his leukemia had severely worsened and he would require triple chemotherapy for the next six months.

36.     When Mr. Zinkel's doctor asked what could have caused the rapid worsening of his cancer, Mr. Zinkel told him of his job stress and the most recent WIP. After hearing such news, Dr. Scott Smith completed FMLA leave paperwork for him and Mr. Zinkel was subsequently placed on a three-month leave.

37.     On December 27, 2014, only two months into the three-month leave he was approved to take, Mr. Zinkel submitted a Return to Work letter and returned to work. His plan was to work during the day shift and receive chemotherapy at night, as he was fearful that he would lose his job if he did not return as soon as he felt well enough to do so, given the comments by Defendant Piper dating back to 2010, and the meetings he had with Defendants over the preceding few months.

38.     Mr. Zinkel attached a copy of his chemotherapy schedule to his letter and sent it to Defendant Komanduri. She did not respond. Throughout January and February of 2015, Mr. Zinkel met with Defendant Komanduri to review his progress on his plan for staff reorganization and on his WIP. Those meetings were also attended by Defendant Nelson, who did the majority of the talking just as she had during the October 24 WIP meeting.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 10 of 23

39.     On Friday, February 20, 2015, Mr. Zinkel was called into a meeting with Human Resources. At the meeting, he received a Confidential Separation Agreement and Release from Defendants Nelson and Komanduri. After Mr. Zinkel informed them that he was still receiving chemotherapy and that their actions might be in violation of the ADA, the two women left the room for approximately thirty minutes and then returned to inform Mr. Zinkel that he could extend his FMLA leave for another three months. However, they also notified Mr. Zinkel that at the end of the three-month extension, they could either finalize the separation agreement or start a long-term disability claim.

40.     Mr. Zinkel asked if he would be allowed to return to Loyola following his FMLA leave and Defendants Nelson and Komanduri replied that his employment would be terminated once his leave expired.

41.     In March of 2015, less than a month after the termination of Mr. Zinkel's employment, Acting Director Bob Obias, Mr. Zinkel's interim replacement, implemented the very organizational plan that was the purported basis for Defendants' decision to terminate Mr. Zinkel's employment. The 100-point metric that Mr. Zinkel had been proposing since the September 30, 2014 meeting, that Defendants repeatedly rejected, was also adopted soon after the termination of Mr. Zinkel's employment. Both were accepted by Defendants when proposed by Mr. Zinkel's replacement. On the basis of those data points, under that metric, Defendant Loyola advised Mr. Obias that his department was understaffed.

## COUNT I – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Defendants Piper, Komanduri, and Nelson)

42.     Mr. Zinkel restates and realleges by reference paragraphs 1 through 41 as paragraph 42 of Count I.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 11 of 23

11

43.     Defendants occupied a position of authority giving them the power to affect Mr. Zinkel's continued employment and compensation with Loyola. The individual Defendants were agents of Defendant Loyola and used the positions and authority bestowed upon them by Defendant Loyola to cause severe emotional distress to Mr. Zinkel.

44.     As of their September 30, 2014 meeting with Mr. Zinkel, wherein they advised him to cut seven FTEs from his department, Defendants had recently demonstrated a pattern of discharging employees in Mr. Zinkel's demographic. Defendants had also expressed goals of cutting what they referred to as "non-productive days off," which included sick days.

45.     Mr. Zinkel was diagnosed with leukemia in late 2011 and was experiencing the stress that comes with a cancer diagnosis from that point forward. Defendants Nelson and Piper were aware of his condition as of their approval of his June 2013 FMLA leave, and Defendant Komanduri was informed by Mr. Zinkel that he had leukemia during the October 24, 2014 WIP meeting.

46.     Defendants knew that directing Mr. Zinkel to fire seven FTEs would add emotional distress to his already vulnerable state.

47.     After verifying the correct number of FTEs was four, Mr. Zinkel drafted plans that would ensure that his department would continue running in the same manner as directed by Defendants.

48.     Defendants intentionally denied any plans that Mr. Zinkel proposed to make him seem ineffective.

49.     The conduct Defendants engaged in, including consistently denying Mr. Zinkel's plans while he was in an already emotionally and physically vulnerable state, issuing a WIP with false statements regarding his performance, yelling at him and attacking him during meetings,

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 12 of 23

attempting to terminate Mr. Zinkel's employment while he was receiving increased chemotherapy and had just returned to work early from an FMLA leave, and ultimately approving his plans when later presented by his successor, after ridiculing and denying those same plans when proposed by Mr. Zinkel was extreme and outrageous.

50.     Defendants meant to cause, or recklessly or consciously disregarded the probability that their treatment of Mr. Zinkel may cause, severe emotional distress to a man who previously advised them that maintaining his job and his health benefits was critical to his ability to survive his leukemia diagnosis, and could also cause him additional stress that could and did exacerbate his already fragile medical condition.

51.     As a proximate result of the Defendants' conduct, Mr. Zinkel has suffered severe and extreme emotional distress, in the form of fright, worry, shame, hopelessness, despair, humiliation, and panic that he might die if he lost his job and his benefits, rendering him unable to pay for his continued medical care. Those emotions manifested in Mr. Zinkel breaking down and crying at the October 24, 2014 meeting, Mr. Zinkel collapsing in his office, and ultimately a severe worsening of his previously diagnosed leukemia.

52.     No reasonable person could have been expected to endure the treatment Mr. Zinkel received, given his medical condition of which Defendants were aware when they caused him additional stress and severe emotional distress.

**WHEREFORE**, Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendants Piper, Komanduri, and Nelson, jointly and severally, as follows:

A.     An award of compensatory damages in an amount to be proven at trial, but which is in excess of $30,000;

B.     An award of costs;

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 13 of 23

C.  An award of punitive damages to be determined by the trier of fact; and

D.  Such other, further, and additional relief as may be just in law and in equity.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, BY
### *RESPONDEAT SUPERIOR*
### (Against Defendant Loyola)

53.  Mr. Zinkel restates and realleges by reference paragraphs 1 through 52 as paragraph 53 of Count II.

54.  When the individual Defendants caused Mr. Zinkel severe emotional distress through their pattern of extreme and outrageous conduct as detailed *supra*, either with the intent to cause, or the knowledge of a high degree of probability that their conduct would cause, severe emotional distress to Mr. Zinkel, they were acting within the scope of their employment with Defendant Loyola.

55.  As the individual Defendants acted within the scope of their employment while committing intentional infliction of emotional distress against Mr. Zinkel, their conduct may be imputed to Defendant Loyola by the theory of *respondeat superior*.

**WHEREFORE**, Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendant Loyola, as follows:

A.  An award of compensatory damages in an amount to be proven at trial, but which is in excess of $30,000;

B.  An award of costs;

C.  An award of punitive damages to be determined by the trier of fact; and

D.  Such other, further, and additional relief as may be just in law and in equity.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 14 of 23

**COUNT III – TORTIOUS INTERFERENCE WITH
A BUSINESS RELATIONSHIP OR EXPECTANCY
(Against Defendants Piper, Komanduri, and Nelson)**

56.     Mr. Zinkel restates and realleges by reference paragraphs 1 through 55 as paragraph 56 of Count III.

57.     Mr. Zinkel was an employee with Loyola for over thirty-three years. All parties were aware of said employment relationship.

58.     Defendants had no justification for including false information within the WIP that they issued to Mr. Zinkel.

59.     Defendants had no justification for denying Mr. Zinkel's plans to address the concerns they raised with him on September 30, 2014, while also allowing his department to maintain its previous level of service to patients. Their lack of justification for said denial was evidenced when one of his plans was adopted and implemented when proposed by his interim successor following the termination of Mr. Zinkel's employment.

60.     Considering Mr. Zinkel's clinical qualifications, experience, and lack of valid performance criticisms, the individual Defendants acted in direct contradiction to the interests of Defendant Loyola.

61.     Prior to the meetings on September 30, 2014, October 24, 2014, and February 20, 2015, Mr. Zinkel reasonably expected to continue his employment with Loyola. Defendants knew of his intention to maintain his employment with Loyola as he expressed such an intention at the September 30, 2014 meeting, at which he advised Defendants of his desire to keep his job and to retain all the benefits associated with that position to allow him to continue to work, while also undergoing treatment for his medical condition.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 15 of 23

15

62.     The individual Defendants interfered with and terminated Mr. Zinkel's employment and thereby interfered with the continued development of his business relationship with Defendant Loyola. They did so to further their own interests in presenting a reduced budget to corporate headquarters because by reducing costs they would receive higher bonuses. It was not in the interest of Defendant Loyola to violate state and federal discrimination laws and expose Defendant Loyola to damages. Nor was it in Loyola's interest to terminate the employment of a 33-year veteran who had contributed so much to the hospital and the community.

63.     As a result of tortious interference by the individual Defendants, Mr. Zinkel has damages including, but not limiting to, substantial loss of economic opportunity and damage to his professional reputation.

**WHEREFORE,** Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendants Piper, Komanduri, and Nelson as follows:

A.      An award of compensatory damages in an amount to be proven at trial;

B.      An award of punitive damages to be determined by the trier of fact;

C.      An award of costs; and

D.      Such other, further, and additional relief as may be just in law and in equity.

## COUNT IV – DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.*
### (Against Defendant Loyola)

64.     Mr. Zinkel restates and realleges by reference paragraphs 1 through 63 as paragraph 64 of Count IV.

65.     Mr. Zinkel, a Caucasian male, met the legitimate expectations of his employer Loyola at the time his employment was terminated.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 16 of 23

16

66.     During the last year of his employment, Mr. Zinkel was treated less favorably than similarly situated colleagues who were outside his protected classes, including race and age.

67.     Mr. Zinkel was replaced by someone outside his protected classes.

68.     The reasons for the termination of Mr. Zinkel's employment were pretextual. The true reasons for the termination were unlawful discrimination based at least in part on his race and age.

69.     The aforementioned conduct is a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and resulted in damage to Mr. Zinkel.

**WHEREFORE,** Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendant Loyola, as follows:

A.     An award of compensatory damages in an amount to be proven at trial, but which is in excess of $30,000;

B.     An award of punitive damages to be determined by the trier of fact;

C.     An award of costs;

D.     An award of attorney's fees;

E.     Injunctive relief prohibiting Loyola from engaging in such conduct in the future; and

F.     Such other, further, and additional relief as may be just in law and in equity.

**COUNT V – DISCRIMINATION IN VIOLATION OF THE
AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 *et seq.***
**(Against Defendant Loyola)**

70.     Mr. Zinkel restates and realleges by reference paragraphs 1 through 69 as paragraph 70 of Count V.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 17 of 23

71.     Mr. Zinkel was over the age of 40 and met the legitimate expectations of his employer Loyola at the time his employment was terminated.

72.     During the last year of his employment, Mr. Zinkel was treated less favorably than similarly situated colleagues who were under the age of 40 or significantly younger than him.

73.     Mr. Zinkel was replaced by someone outside his protected class.

74.     The reasons for the termination of Mr. Zinkel's employment were pretextual. The true reasons for the termination were unlawful discrimination in violation of the Age Discrimination in Employment Act.

75.     The aforementioned conduct is a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and resulted in damage to Mr. Zinkel.

**WHEREFORE**, Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendant Loyola, as follows:

A.     An award of liquidated damages in the amount of twice his lost wages;

B.     An award of costs;

C.     An award of attorney's fees; and

D.     Such other, further, and additional relief as may be just in law and in equity.

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 18 of 23

**COUNT VI – DISCRIMINATION IN VIOLATION OF
THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12111 *et seq.*
(Against Defendant Loyola)**

76.     Mr. Zinkel restates and realleges by reference paragraphs 1 through 75 as paragraph 76 of Count VI.

77.     Mr. Zinkel was disabled yet met the legitimate expectations of his employer Loyola at the time of the termination of his employment. Prior to the termination of his employment, he was diagnosed with leukemia, a diagnosis that was known to his then employer Loyola.

18

78.     During the last year of his employment, Mr. Zinkel was treated less favorably than similarly situated colleagues who were not disabled.

79.     Mr. Zinkel was replaced by someone who was not disabled.

80.     The reasons for the termination of Mr. Zinkel's employment were pretextual. The true reasons for the termination were unlawful discrimination based at least in part on his disability.

81.     The aforementioned conduct is a violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, and resulted in damage to Mr. Zinkel.

**WHEREFORE,** Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendant Loyola, as follows:

A.     An award of compensatory damages in an amount to be proven at trial, but which is in excess of $30,000;

B.     An award of costs;

C.     An award of attorney's fees;

D.     An award of punitive damages to be determined by the trier of fact;

E.     Injunctive relief prohibiting Loyola from engaging in such conduct in the future; and

F.     Such other, further, and additional relief as may be just in law and in equity.

**COUNT VII – WRONGFGUL DISCHARGE**
**(Against Defendant Loyola)**

82.     Mr. Zinkel restates and realleges by reference paragraphs 1 through 81 as paragraph 82 of Count VII.

83.     Mr. Zinkel suffered from a work injury and filed a worker's compensation claim under the Illinois Workers Compensation Act, 820 ILCS 305/1 *et seq.*, prior to the termination of

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 19 of 23

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 20 of 23

his employment by Loyola. The workers' compensation claim filed by Mr. Zinkel was known to Loyola prior to and at the time of the termination of Mr. Zinkel's employment.

84. During the last year of his employment, Mr. Zinkel was treated less favorably than similarly situated colleagues who had not filed workers' compensation claims. Loyola management made negative comments about his work injury prior to the termination of his employment and expressed disdain toward injured or ill employees.

85. The reasons for the termination of Mr. Zinkel's employment were pretextual as he was meeting his employer's legitimate expectations at the time of the termination of his employment. The true reasons for the termination were unlawful discrimination based at least in part on filing a worker's compensation claim.

86. It is against Illinois public policy to terminate the employment of employees who have filed claims based on work injuries.

87. The aforementioned conduct is a violation of Illinois common law and resulted in damage to Mr. Zinkel.

**WHEREFORE,** Plaintiff John Zinkel respectfully requests the entry of judgment in his favor and against Defendant Loyola, as follows:

A. An award of compensatory damages in an amount to be proven at trial, but which is in excess of $30,000;

B. An award of punitive damages to be determined by the trier of fact;

C. An award of costs; and

D. Such other, further, and additional relief as may be just in law and in equity.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**Dated:** January 17, 2017

**JOHN ZINKEL**

 /s/ Ruth I. Major
One of His Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, PC
30 West Monroe Street, Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 21 of 23

21

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
John Zinkel

_____
Date 1/13/2017

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 22 of 23

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2017, I filed **Plaintiff's Amended Verified Complaint** with the Clerk of Court and emailed notification of said filing to all parties listed below:

Camille Khodadad
Brian F. Hendricks
Hall Prangle & Schoonveld
200 South Wacker Drive
Suite 3300
Chicago, Illinois 60606
Phone: (312) 345-9600
ckhodadad@hpslaw.com
bhendricks@hpslaw.com

/s/ Ruth I. Major

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 23 of 23

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, PC
30 West Monroe Street
Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
CALENDAR: R
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| **JOHN ZINKEL** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2016 L 009718** |
| **v.** | ) | |
| | ) | **Honorable Larry G. Axelrood** |
| **VICKY PIPER, an individual, PRADIPTA** | ) | |
| **KOMANDURI, an individual, CAROLYN** | ) | |
| **NELSON, an individual, and LOYOLA** | ) | |
| **UNIVERSITY HEALTH SYSTEM, an** | ) | |
| **Illinois corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF FILING

TO:    Camille Khodadad
       Brian F. Hendricks
       Hall Prangle & Schoonveld
       200 South Wacker Drive
       Suite 3300
       Chicago, Illinois 60606
       Phone: (312) 345-9600
       ckhodadad@hpslaw.com
       bhendricks@hpslaw.com

  **Please take notice** that on January 17, 2017 counsel for Plaintiff, John Zinkel, filed with the Clerk of the Circuit Court of Cook County **Plaintiffs' Amended Verified Complaint**, a true and correct copy of which is hereby served upon you.

**Dated:** January 17, 2017                    Respectfully Submitted,

                                              **JOHN ZINKEL**


                                              By:   /s/Ruth I. Major
                                                    One of His Attorneys

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, PC
30 West Monroe Street
Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 2 of 3

2

## CERTIFICATE OF SERVICE

     I hereby certify that on January 17, 2017, I filed the foregoing **Notice of Filing** for **Plaintiff's Amended Verified Complaint** with the Clerk of Court and emailed notification of said filing to all parties listed below:

> Camille Khodadad
> Brian F. Hendricks
> Hall Prangle & Schoonveld
> 200 South Wacker Drive
> Suite 3300
> Chicago, Illinois 60606
> Phone: (312) 345-9600
> ckhodadad@hpslaw.com
> bhendricks@hpslaw.com

/s/ Ruth I. Major

ELECTRONICALLY FILED
1/17/2017 1:57 PM
2016-L-009718
PAGE 3 of 3

Ruth I. Major
Daniel R. Broadwell
The Law Offices of Ruth I. Major, PC
30 West Monroe Street
Suite 1650
Chicago, Illinois 60603
Phone: (312) 893-7544
rmajor@major-law.com
dbroadwell@major-law.com
Firm No. 45037

# Law DIVISION
## Litigant List

Printed on 01/17/2017

Case Number: 2016-L-009718                                           Page 1 of 1

## Plaintiffs

| Plaintiffs Name | Plaintiffs Address | State | Zip | Unit # |
|---|---|---|---|---|
| ZINKEL JOHN | | | 0000 | |

Total Plaintiffs: **1**

## Defendants

| Defendant Name | Defendant Address | State | Unit # | | Service By |
|---|---|---|---|---|---|
| KOMANDURI PRADIPTA | 2160 S. FIRST AVENUE | IL | 0000 | | |
| NELSON CAROLYN | 2160 S. FIRST AVENUE | IL | 0000 | | |
| PIPER VICKY | 2160 S. FIRST AVENUE | IL | 0000 | | |
| LOYOLA UNIVERSITY HEALTH | | | 0000 | | |

Total Defendants: 4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-LAW DIVISION                          Rev. 1/17

Z~~~~ Plaintiffs                    )
                                    )   NO: 2016 L9718
        -v-                         )
                                    )   Motion Call: "R"  Time: 10:00  Line #: 21
Loyola University Health System, et al., )
        Defendants                  )   2005 Trial Date: N/A
              **CASE MANAGEMENT ORDER**

**(Please check off all pertinent paragraphs and circle proper party name)**

(4231) _____ 1. Written, 213(f)(1), (f)(2) and 214 discovery to be **issued** by _____ *or deemed waive*

(4296) _____ 2. Written, 213(f)(1), (f)(2) and 214 discovery to be **answered** by _____

(4218) _____ 3. Party depositions, fact, 213(f)(1) and/or (2) depositions to be **completed** by _____

(4297) _____ 4. Plaintiff to send list & addresses of treaters to Defendant(s) by _____

(4288) _____ 5. Subpoenas for treating physicians' records/deps to be **issued** by _____ *or deemed waive*

(4218) _____ 6. Treating physicians depositions to be **completed** by _____

(4231) _____ 7. All dispositive motions shall be filed **no later than** _____

(4296) _____ 8. All SCR 215 & 216 discovery **completed** by _____

(4206) _____ 9. (Plaintiff) - (Defendant) - (Add. Party) shall **answer** 213 (f)(3) Interrogatories by _____

(4218) _____ 10. **Plaintiff's 213(f)(3)** witnesses' depositions to be **completed** by _____

(4218) _____ 11. **Defendant's 213(f)(3)** witnesses' depositions to be **completed** by _____

(4218) _____ 12. **Add. party's 213(f)(3)** witnesses' depositions to be **completed** by _____

(4295) _____ 13. All fact discovery, SCR 213(f)(1), (f)(2), 215(a) and 216 discovery is closed. *(Circle all applicab*

(4619) _____ 14. The matter is continued for subsequent Case Management Conference on __3/3/17__
                at __10:00__ AM/PM in Room 2208 for:
        (A)_✓_ Proper Service      (B)_____ Appearance of Defendants   (C)_____ Case Value
        (D)_✓_ Pleadings Status    (E)_____ Discovery Status           (F)_____ Pre-Trial/Settlement
        (G)_____ Mediation Status  (H)_____ Trial Certification        (I)_____ Other
        DEFENDANTS MOTION TO DISMISS IS ENTERED AND CONTINUED TO
        MARCH 3, 2017, AT 10:00AM
        _____

(4005) _____ 14. Case is DWP'd.     (4040) _____ The case is voluntarily dismissed pursuant to 735 ILCS 5/2-1009

(4331) _____ 15. Case stricken from   (4284) _____ Motion Stricken or        (4330) _____ Case stricken from
              CMC Call                        Withdrawn from Call                     Motion Call.
NAME: The Law Offices of Kurt E. Maar, P.C.        E N T E R :
ADDRESS: 30 W. Monroe, Suite 1670, Chicago, IL 60603
PHONE: 312-273-7544
ATTY ID#: 42975
ATTY FOR PARTY:                                     J U D G E                                   NO
NOTICE: Plaintiff

★ *COPIES OF ALL PRIOR CMC ORDERS MUST*
*BE BROUGHT TO ALL CMC COURT DATES.*                    E N T E R E D
                                                        JUDGE LARRY AXELROOD-1966
★ *FAILURE OF ANY PARTY TO COMPLY WITH*
*THIS CMC ORDER WILL BE A BASIS FOR SCR*                    FEB 0 3 2017
*219(C) SANCTIONS.  FAILURE OF ANY PARTY*
*TO ENFORCE THIS CMC ORDER WILL CONSTITUTE*             DOROTHY BROWN
*A WAIVER OF SUCH DISCOVERY BY THAT PARTY.*             CLERK OF THE CIRCUIT COURT
                                                        OF COOK COUNTY, IL
                                                        DEPUTY CLERK

DEFENDANT'S
EXHIBIT
G